## CLEM HALBERT *v*. THE STATE.

1. MURDER — CHARGE OF THE COURT. — Though in a murder case the charge to the jury on the first degree be in some respects objectionable, yet, if it be correct on the second degree, and the accused be convicted of the second degree, the conviction, if sustained by the evidence, will not be disturbed.

2. MURDER IN THE FIRST DEGREE. — To constitute murder in the first degree, no appreciable space of time need intervene between the formation of the homicidal intent and the homicidal act.

3. DISTINCTION BETWEEN THE DEGREES OF MURDER. — The difference between the degrees of murder does not result from the length of time taken to form the design to kill, nor from the speed with which that design is executed, but from the state and condition of the mind in which the design is formed.  If the killing be done in pursuance of a formed design of a sedate, deliberate mind to kill the deceased, or to inflict upon him by any unlawful act some serious bodily injury whereof he may die, the killing is upon express malice, and murder in the first degree.

4. MURDER IN THE SECOND DEGREE. — If, with malice aforethought and intent to kill, the accused shot at another person, and unintentionally killed the deceased, the killing is upon malice implied by law, and is murder in the second degree.

5. CHARGE OF THE COURT. — If the evidence in a murder case be such that the jury cannot, in any view of it, find that the killing was done in the sudden heat of passion, arising from an adequate cause, it is not incumbent on the

court to give in charge to the jury the law of manslaughter. Otherwise, however, if there be a doubt, however slight, that such is the character of the evidence.

APPEAL from the District Court of Robertson. Tried below before the Hon. W. D. WOOD.

The case is clearly disclosed by the opinion of the court.

*James R. Ross*, for the appellant.

*George McCormick*, Assistant Attorney General, and *O. M. Watkins*, for the State.

ECTOR, P. J.   The defendant was indicted in the District Court of Robertson County, at its December term, 1877, for the murder of Phena Robertson. He was convicted by the jury of murder in the second degree, and his punishment assessed at confinement for the term of thirty-five years in the state penitentiary. A motion for new trial was overruled. No exception was taken to the indictment. It follows the approved precedents of an indictment for murder, and sufficiently charges the defendant with the commission of the offense.

The evidence shows that there was a dance at the house of one Oscar Perry, in Robertson County, on the night of December 24, 1877. In an interval between the dances, Jordan Dailey, the fiddler, laid down his fiddle and went out of the house, and the defendant picked up his fiddle. When Dailey returned, he said to defendant, "What are you doing with my fiddle?" Clem Halbert, the defendant, replied, "I am looking at it." Jordan then told Clem Halbert not to handle it. Clem Halbert then said, "G—d d—n, do you want to kick up a fuss about it? I can buy strings for your d—d old fiddle, and, G—d d—n you, I can whip you, and I can kill you." John Henry then said,

VOL. III — 42

"Clem, you have come here to break up the dance," and then "John Henry and Green Frazier took hold of defendant and put him out of the house." The defendant then left. He went to the house of one Brown, got a double-barrel shot-gun, loaded it, and carried it away with him. He returned in about half an hour to the house of Oscar Perry. Henry Perry and the deceased, and some of the other persons at the ball, were out in the gallery. Defendant said to Perry, "Henry Perry, you boys have imposed on me to-night." Henry replied, "I have not imposed on you," and started into the room. Defendant then said, "If you don't scatter, I will show who has imposed on me." When he said this, defendant stepped to a tree close by, picked up his gun, presented it in the direction of the gallery, fired, and killed Phena Robertson. He then ran off.

The foregoing is a brief synopsis of the testimony as shown by the statement of facts. There is no conflict in the testimony except in one particular. Some of the witnesses say defendant fired two shots; others, that he fired but one.

The first error assigned by the defendant is as follows:

"1. The court erred in the last clause of the fourth section of his charge to the jury, viz.: 'However sudden the killing may be, and seemingly rash and inconsiderate, if the means used or the manner of doing it, or the external circumstances attending it, establish a sedate and deliberate mind, and fixed purpose and formed design to kill or do great bodily injury — a mind sufficiently cool to be able to reflect upon and contemplate the act of the killing and its results — such killing will be upon express malice, and murder of the first degree.'"

We might dispose of the first error assigned by saying that, if there was any error committed by the court in the

fourth subdivision of its charge, it was one of which the defendant ought not to complain, as the jury did not find him guilty of murder in the first degree.

Though the charge, on a trial for murder, may in some respects be objectionable as to murder in the first degree, yet if it is not so as to murder in the second degree, and the jury find the defendant guilty of murder in the second degree, which finding is fully supported by the evidence, the verdict should not be disturbed. *Taylor* v. *The State,* *ante,* p. 387 ; *McRea* v. *The State,* 52 Ga. 293.

This objection to the charge of the court is not well taken. It correctly defines murder, and gives the distinction between murder in the first and second degrees, and between express and implied malice.

To constitute murder in the first degree it is not necessary that there should be any appreciable space of time between the formation of the intention to kill, on the part of the slayer, and the act of killing. The difference in the degrees of murder, as said by Justice Moore (42 Texas, 273), does not result from the length of time taken to form the design, or the speed with which it is executed, but upon the state and condition of the mind in which the design is formed. If the act is done in pursuance of a formed design of a sedate, deliberate mind to kill the deceased, or to inflict upon him by any unlawful act some serious bodily harm which might probably end in depriving him of his life, the killing would be upon express malice. It is true, both in fact and experience, that no time is too short for a wicked man to frame in his mind his scheme of murder, and to contrive the means of accomplishing it.

If the design to kill has its first inception and origin in an inflamed and excited mind, incapable of such sedate and deliberate action as is compatible with express malice, and such design is carried into immediate execution before there has been cooling time for passion, or for the excitement to

abate and the mental equilibrium to be restored, the killing under such circumstances, no matter how such passion or excitement has been induced or originated, cannot be murder in the first degree. If there be time to frame in the mind fully and consciously the intention to kill another unlawfully, and if in pursuance of that design the accused select the weapon or means of death — think and know beforehand, though the time be short, the use to be made of it — there is time to deliberate and premeditate.

The second objection to the charge is not well taken. The error complained of was applicable to a killing upon express malice.

The third error assigned is that " the court erred in the last clause of the ninth section of its charge to the jury, viz. : 'Words or gestures, however insulting or aggravating, will not justify blows, much less the killing of a man ; nor will they mitigate or reduce the killing below the offense of murder in the second degree. An assault and battery, committed by the party killed upon the party killing, causing pain or bloodshed, is adequate cause for passion ; and, if the killing is done under the immediate influence of passion so aroused, this is a fact sufficient to extenuate and reduce the offense of killing below murder in the second degree.' "

The jury could not have been misled by the last clause of the ninth section of the charge of the court, to the prejudice of the defendant. As the court did not give the jury a charge upon which they could find the defendant guilty of manslaughter, or any other culpable homicide below the grade of murder in the second degree, this part of the charge was as favorable to the defendant as he could ask ; for, if the jury did not find the defendant guilty of murder in the second degree, under the charge they could not convict him at all.

If the defendant, with malice aforethought, shot at Perry

or some person other than the deceased, with the intent to kill him, and unintentionally killed Phena Robertson, then and in such case the law implies and imputes to the killing malice, and the defendant is guilty of murder in the second degree.

We deem it not necessary to notice at greater length the other errors assigned. We have not been referred to a single authority which supports the objections taken to the charge of the court by the counsel for the defendant. It presents a very elaborate and correct exposition of the law as applicable to murder, both in the first and second degrees, as laid down in the former decisions of our Supreme Court and of this court.

We think there was no evidence upon which the jury could have found that the killing was done in the sudden heat of passion, arising from an adequate cause, and that the court was not required to give an instruction as to the reduction of the crime to manslaughter. No such instruction was asked by the defendant. The case which the facts made was either murder in the first or murder in the second degree. Under no view of the facts proved could the defendant have been guilty of manslaughter.

If in any case the facts proven create a doubt, however slight, that the case might be graded below murder, then the court should give the jury the opportunity to pass upon that doubt. In a doubtful case the court must not solve the doubt resting on the facts; for, if it does, and this court affirm the judgment of the lower court, that court and this will decide doubtful facts, and the right of trial by jury will be practically gone.

We find nothing in the entire record that requires a reversal of the judgment. The judgment is affirmed.

*Affirmed.*